(85 Misc. Rep. 609)

## BRESSLIN v. STAR CO.

(Supreme Court, Trial Term, Kings County. May, 1914.)

1. LIBEL AND SLANDER (§ 42*)—NEWSPAPER ARTICLE—QUALIFIED PRIVILEGE—JUDICIAL PROCEEDING.

   A newspaper article written in a humorous vein, charging plaintiff with grand larceny by suggesting that he had feloniously swallowed a diamond ring and that he had been arrested on the charge, was not privileged; it not being a fair and impartial report of a judicial proceeding then pending, since it implied that plaintiff was guilty as a fact rather than reciting that he was so charged.

   [Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 127–129; Dec. Dig. § 42.*]

2. LIBEL AND SLANDER (§ 121*)—EXCESSIVE DAMAGES.

   In an action against a newspaper for libel for publishing an article charging plaintiff, a deaf mute, and a Russian with no education, with grand larceny by suggesting that he swallowed a diamond ring of the value of $90, a verdict for $6,000 was not excessive; defendant having pleaded justification and attempted to support it by proof.

   [Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 353, 354; Dec. Dig. § 121.*]

3. NEW TRIAL (§ 76*)—DAMAGES—QUESTION FOR JURY—VERDICT—CONCLUSIVENESS ON APPEAL.

   In an action for libel, the question of damages is peculiarly for the jury, and their verdict should not be set aside unless so manifestly unjust as to indicate passion and prejudice.

   [Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 153–156; Dec. Dig. § 76.*]

Action by Leon Bresslin against the Star Company. Verdict for plaintiff for $6,000. Motion to set aside verdict denied.

Julius S. Belfer, of Brooklyn (Jay S. Jones, of Brooklyn, of counsel), for plaintiff.

Clarence J. Shearn, of New York City (Mirabeau L. Towns, of New York City, of counsel), for defendant.

BENEDICT, J. By the verdict of the jury the plaintiff has been awarded the sum of $6,000 as damages for a libelous publication in the New York American of December 25, 1912. The defendant has moved to set aside the verdict upon the ground, among others, that the verdict is excessive. It is upon that point alone that the motion will be considered.

The defendant endeavored under its plea of justification to establish upon the trial the truth of the libel, but the verdict went against it upon that issue. It also pleaded facts concerning the sources of its information, by reason of which it claimed qualified privilege, or that, if the article were not privileged, the facts should at least be considered in mitigation of the plaintiff's damages; and upon the trial it gave evidence upon those branches of its defense. The court did not submit to the jury the question of privilege of the publication, holding that the article was not merely a fair and impartial report of a judicial pro-

ceeding; but it did submit the question of good faith and lack of malice resting upon the alleged sources of information which the defendant pleaded and endeavored to prove. It is impossible, of course, to determine from the verdict what weight the jury gave to such mitigating evidence, or what amount would have been awarded as damages had it not been given; but upon this motion it may be assumed that the jury considered it in assessing the damages, if they believed the mitigating facts to have been established by the evidence.

[1, 2] In this case the libel was embodied in an article written in a vein of humor, or, as its author testified, written in as funny a way as he could make it. This article in substance charged the plaintiff with the crime of grand larceny in the second degree by suggesting that he had feloniously swallowed a diamond ring of the value of $90 and that he had been arrested on that charge. As already intimated, the article was not merely a fair and impartial report of a judicial proceeding. It implied that the plaintiff was guilty of the crime of grand larceny as a fact, rather than reciting the charge as an incident in a criminal proceeding then being reported. Therefore the article was not entitled to qualified privilege under the statute, as it would have been had it been merely a full, accurate, and impartial report of the criminal proceeding then pending against the plaintiff, and which at the hearing terminated in his favor. The plaintiff is a deaf mute who came from Russia only a few years ago, and he has had no education either in Russia or in this country. He is married and has a child. In its defense the defendant not only republished the libelous charge of grand larceny by alleging and attempting to prove the truth of the libel, but it charged in its answer that the plaintiff when arrested was carrying a concealed weapon upon his person; the sole basis for such gratuitous, irrelevant, and prejudicial charge being that the plaintiff had purchased a small toy or cap pistol as a Christmas present for his child. Notwithstanding the infirmity of the plaintiff, by reason whereof he was at a great disadvantage in the magistrate's court, he was discharged; and although the present defendant bent its energies strenuously to prove his guilt upon the trial of the case at bar, and although the court would not permit him to testify on his own behalf on account of this infirmity, the plaintiff has again been exonerated from the charge and has been awarded a large verdict by the jury for the libel. The defendant now claims that this verdict is excessive and should be set aside.

Had the defendant not sought to establish the truth of the libel upon this trial by pleading justification and giving evidence thereon, there would be more reason for setting the verdict aside as one arrived at in anger or prejudice. Indeed, it is highly probable that, had the charge been retracted rather than deliberately repeated and maintained by the defendant, the jury itself would have awarded far less damages than it gave; because the jurors in this case seemed more than ordinarily discriminating and intelligent, and they were instructed that the question of good faith in the attempted justification was for them to consider. Marx v. Press Publishing Co., 134 N. Y. 561, 31 N. E. 918.

[3] In view of these considerations, should the court interfere with this verdict? I think not. It is well-settled law, founded upon reason and good sense, that the question of the proper damages to be assessed

in actions for libel, or in the cognate action for slander, is peculiarly within the province of the jury; and their judgment as to the damages for the wrong which the plaintiff has suffered and the amount which the defendant should be made to pay for falsely and maliciously invading his rights ought not to be disturbed, unless it be so manifestly unjust as to indicate that the jury reached its verdict through passion, bias, or prejudice, and not upon principles of a sound discretion taking into consideration all circumstances in mitigation or aggravation. There is, of course, no doubt of the power of this court either at Trial Term or upon appeal to reduce a verdict conditionally in an action for libel (Holmes v. Jones, 121 N. Y. 461, 467, 24 N. E. 701); but the power may well be permitted to remain dormant in this case.

In Sutherland on Damages, § 1206, it is stated:

"There is no legal measure of damages in actions for these wrongs. The amount which the injured party ought to recover is referred to the sound discretion of the jury. The damages are intended to repair the injury done; and all that the law can determine in a given case is what facts proved in a given case may be taken into account, and what are fair considerations to influence the jurors' judgments. They are to consider the plaintiff's injured feelings and tarnished reputation, taking into account the nature of the imputation, the nature of its publicity, the character, condition, and influence of the parties." (See cases cited in note to the text.)

In Townshend on Slander and Libel (4th Ed.) p. 524, the author says:

"As the amount of damages in an action for slander or libel is always a subject for the exercise of the sound discretion of the jury, who may give more or less according to their conclusions from the whole case respecting the motives of the publisher, a verdict in such an action will not be set aside for excessive damages unless there is some suspicion of unfair dealing, or 'unless the case be such as to furnish evidence of prejudice, partiality or corruption on the part of the jury.' The case must be very gross, and the damages enormous, to justify ordering a new trial on a question of damages." (See cases cited in note with statement of amounts awarded in various cases.)

In the able work of the late Judge Jaggard, "Handbook of the Law of Torts," the subject of excessive damages is discussed as follows (volume 1, p. 400):

"In cases in which from the nature of things there is no fixed standard of compensation, a court will set aside a verdict which is so excessive that it cannot be accounted for on any other ground than that the jury was misled by passion, prejudice, or ignorance, or when the verdict bears other internal evidence of intemperance in the minds of the jury."

He refers to a remark in an opinion by Lord Camden (Huckle v. Money, 2 Wils. 207), where it is said:

"It is very dangerous for the judges to intermeddle in damages for torts; it must be a glaring case indeed of outrageous damages in a tort, and which all mankind at first blush must think so, to induce a court to grant a new trial for excessive damages."

In the same case the Lord Chief Justice made the following observation on the subject:

"In all motions for new trials it is as absolutely necessary for the court to enter into the nature of the cause, the evidence, facts, and circumstances of

the case, as for a jury; the law has not laid down what shall be the measure of damages in action of tort; the measure is vague and uncertain, depending upon a vast variety of causes, facts, and circumstances; torts or injuries which may be done by one man to another are infinite; in cases of criminal conversation, battery, imprisonment, slander, malicious prosecutions, etc., the state, degree, quality, trade or profession of the party injured, as well as the person who did the injury, must be and generally are considered by a jury in giving damages; the few cases to be found in the books of new trials for torts, show that courts of justice have most commonly set their faces against them; and the courts interfering in these cases would be laying aside juries; before the time of granting new trials, there is no instance that the judges ever intermeddled with the damages."

In the present case a remark in the opinion of Mitchell, J., in Conroy v. Pittsburg Times, 139 Pa. 334, 21 Atl. 154, 11 L. R. A. 725, 23 Am. St. Rep. 188, seems peculiarly applicable. He said:

"Actual or special malice can rarely be proved; in fact, it rarely exists. Libelous articles in newspapers seldom spring from any hostility to the individual, but usually from a ruthless disregard of personal feelings and private rights, in the mad hunt for news and sensations."

Motion to set aside verdict denied. Thirty days' stay and 60 days to make case on appeal granted to defendant after service of notice of entry of judgment.